AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Northern District of California

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.  **CR 26-70818-MAG** |
| James Prado Palacio | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

**FILED**

Jun 09 2026

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _February 27, 2026_ in the county of _Santa Clara_ in the _Northern_ District of _California_ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii) | Distribution of 50 grams and more of methamphetamine, a Schedule II controlled substance |
| | PENALTIES:<br>Mandatory imprisonment of ten years; Maximum life imprisonment; Maximum $10 million fine; Maximum life term of supervised release; not less than 5 years of supervised release; mandatory $100 special assessment fee |

This criminal complaint is based on these facts:

See attached affidavit of DEA SA Curtis Ames.

No Bail Arrest Warrant Requested.

☑ Continued on the attached sheet.

/s/ Curtis Ames w/permission by VKD
*Complainant's signature*

DEA SA Curtis Ames
*Printed name and title*

Approved as to form ___/s/___
AUSA  Jeff Nedrow

Sworn to before me by telephone.

Date:  _06/08/2026_

*Virginia K. DeMarchi*
*Judge's signature*

City and state:  _San Jose, California_    Hon. Virginia K. DeMarchi, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A**

**CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Curtis J. Ames, a Special Agent of the Drug Enforcement Administration, having been duly sworn, state as follows:

**INTRODUCTION**

1.      I make this affidavit in support of an application for an arrest warrant and criminal complaint charging James PRADO PALACIO with one count of violating 21 U.S.C. §§841(a)(1) and (b)(1)(A)(viii), which criminalizes the intentional distribution of 50 grams and more of methamphetamine, a federally controlled Schedule II substance.  As supported by this affidavit, PRADO PALACIO intentionally distributed 50 grams and more of methamphetamine on or about February 27, 2026, in San Jose, California, within the Northern District of California.

**SOURCES OF INFORMATION**

2.      The facts in this affidavit come from my direct observations, my training and experience, information from records and databases, and information obtained from other law enforcement agents, officers, and other witnesses.  Where statements made by other individuals (including other special agents and law enforcement officers) are referenced in this affidavit, such statements are described in sum and substance and in relevant part, unless otherwise indicated.  Similarly, where information contained in reports and other documents or records is referenced in this affidavit, such information is also described in sum and substance and in relevant part, unless otherwise indicated.

3.      Because this affidavit is submitted for the limited purpose of establishing probable cause to support the issuance of a criminal complaint and an arrest warrant, I have not included each and every fact known to me about this case.  Rather, I have set forth facts that I believe are sufficient to establish probable cause for a criminal complaint and an arrest warrant.

My understanding of the facts and circumstances in this matter may evolve as the investigation continues.

**AFFIANT BACKGROUND**

4. I am currently employed by the United States Department of Justice, Drug Enforcement Administration ("DEA"), as a Special Agent ("SA"). I have been employed by the DEA since December 2022. I am currently assigned to the San Jose Resident Office (San Francisco Field Division) – Enforcement Group 1. I am an investigator and law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7). I am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

5. Prior to becoming a Special Agent with DEA, I worked as a Police Officer in Massachusetts for the Town of Shrewsbury, for approximately three years. During my time with the Shrewsbury Police Department, I was personally involved in dozens of investigations of and arrests for unlawful possession and use of, possession with intent to distribute, trafficking of, and distribution of controlled substances.

6. Once becoming a DEA SA, I successfully completed a sixteen-week DEA Basic Agent Training Academy at the DEA Academy in Quantico, Virginia. This training provided instruction in the investigation of federal drug trafficking violations, including several hundred hours of comprehensive and formalized instruction in basic narcotics trafficking investigations, drug identification, drug detection, drug interdiction, federal narcotics laws, financial investigations and money laundering, identification and seizure of drug-related assets, undercover operations, and electronic and physical surveillance procedures.

7. I have also received on-the-job training through my participation in numerous drug trafficking investigations and through my work with other experienced federal, state, and

local law enforcement agents and officers. During my employment as a DEA SA, I have participated in many controlled substance investigations either as a case agent or in a supporting role. I have debriefed confidential sources and witnesses who had personal knowledge regarding drug trafficking organizations. In addition, I have discussed with numerous law enforcement investigators and confidential sources the methods and practices used by drug traffickers. I have also participated in many other aspects of drug investigations including, but not limited to, telephone toll analysis, records research, investigative interviews, and electronic and physical surveillance. I have assisted in court-ordered wiretap investigations and supported the execution of numerous federal and state search and arrest warrants related to illegal activities involving controlled substances. Many of these investigations resulted in the arrest of suspects and the seizure of controlled substances and related items.

8. Through my training, education, experience, and conversations with other agents and officers who conduct drug investigations, I have become familiar with drug traffickers' methods of operation, including but not limited to, the manufacturing, distribution, importation, storage, safeguarding, and transportation of controlled substances, and the methods used by drug traffickers to collect, transport, safeguard, remit, and/or launder drug proceeds. Similarly, I have become familiar with drug traffickers' use of mobile telephones, and their use of code words to conduct their business.

## STATEMENT OF PROBABLE CAUSE

### January 16, 2026 Purchase of Methamphetamine from PRADO PALACIO

9.     In approximately January 2026, the Drug Enforcement Administration (DEA) obtained information from a DEA confidential source (hereafter "the CS"[1]) that PRADO PALACIO, the suspected user of the electronic device using number (xxx)-xxx-6133 (hereafter the "PRADO PALACIO Phone"), was distributing large amounts of methamphetamine in and around San Jose, California.  The CS thereafter contacted PRADO PALACIO at the direction of law enforcement to discuss and arrange narcotics transactions, as described below.

10.     In January 2026, the CS and PRADO PALACIO, using the PRADO PALACIO Phone, arranged for a narcotics transaction to take place in San Jose on January 16, 2026, for the sale of approximately two ounces of cocaine and two pounds of methamphetamine.

11.     On January 16, 2026, following a search of CS's person and CS's vehicle for contraband, which yielded no contraband, agents established surveillance in the vicinity of the location agreed upon between the CS and PRADO PALACIO for the drug transaction, at a parking lot in San Jose, California.

12.      Shortly after surveillance was established at the deal location, agents observed PRADO PALACIO walking towards the CS's vehicle within the parking lot, holding a black plastic bag in his (PRADO PALACIO's) left hand. The interactions between the CS and PRADO PALACIO were observed and photographed by agents conducting surveillance. Additionally, the

---

[1] The CS is providing information to federal law enforcement in this investigation in exchange for monetary benefits.  The CS has prior felony convictions for possession/purchase of a controlled substance, possession for sale of a designated control substance, and attempted robbery. The CS also has misdemeanor convictions for assault with force, attempted robbery, and false imprisonment; the most recent conviction was in April 2022 according to available criminal history information.

interactions between the CS and PALACIO were audio and video recorded by recording devices within the CS's vehicle.

13.    At approximately 1:42 p.m., PRADO PALACIO entered the CS's vehicle and provided the CS with approximately two ounces of suspected cocaine and two pounds of methamphetamine in exchange for $3,500.

14.    At approximately 1:45 p.m., following the narcotics transaction, agents observed PRADO PALACIO exit the CS's vehicle and depart the area.  Agents recovered the suspected narcotics within a black plastic bag.

15.    The suspected narcotics purchased from PRADO PALACIO on January 16, 2026, were sent to the DEA's Western Regional Laboratory for testing. The suspected cocaine tested positive for Cocaine Hydrochloride (net weight: $55.7g \pm 0.2g$, substance purity: $87 \pm 6\%$, amount pure substance $48.4g \pm 3.3g$). The suspected methamphetamine tested positive for Methamphetamine Hydrochloride (net weight: $895.7g \pm 0.9g$, substance purity: $98\% \pm 7\%$, amount pure substance: $877.7g \pm 58.6g$).

**January 30, 2026 Purchase of Methamphetamine and Fentanyl from PRADO PALACIO**

16.    Later in January 2026, the CS and PRADO PALACIO, using the PRADO PALACIO Phone, arranged a second narcotics transaction to take place on January 30, 2026, for approximately 2,000 suspected counterfeit fentanyl pills and one pound of methamphetamine.

17.    On January 30, 2026, following a search of the CS's person and vehicle for contraband, which yielded no contraband, agents established surveillance in the vicinity of the location agreed upon between the CS and PRADO PALACIO for the drug transaction.  On this occasion, the CS vehicle was parked near the suspected residence of PRADO PALACIO in San Jose, California.

18.     Shortly after surveillance was established, at approximately 12:05 p.m., agents observed PRADO PALACIO approach the CS's vehicle carrying a brown paper bag. PRADO PALACIO then entered the front right passenger's seat of the CS's vehicle. Inside the vehicle, PRADO PALACIO provided approximately 2,000 suspected counterfeit fentanyl pills and one pound of suspected methamphetamine to the CS in exchange for $3,300.  The interactions between the CS and PRADO PALACIO were observed and photographed by agents conducting surveillance.  They were also audio recorded by a device within the CS's vehicle.

19.     At approximately 12:10 p.m., agents observed PRADO PALACIO exit the CS's vehicle, with nothing in his (PRADO PALACIO's) hands.  Agents observed PRADO PALACIO continue to walk in the direction of one of the apartment buildings and enter the southernmost walkway of the building before walking out of the sight line of surveillance units. Agents recovered the suspected narcotics within a brown paper bag.

20.     The suspected narcotics purchased from PRADO PALACIO on January 30, 2026, were sent the DEA's Western Regional Laboratory for testing. The suspected counterfeit fentanyl pills tested positive for N-Phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide (Fentanyl) (calc. as Hydrochloride) (net weight: 224.4 g ± 0.2 g, substance purity: 1.2% ± 0.2%, amount pure substance: 2.6g ± 0.4g). The suspected methamphetamine tested positive for Methamphetamine Hydrochloride (net weight: 447.1g ± 0.9g, substance purity: 99% ±7%, amount pure substance: 442.6g ± 29.4g).

### February 27, 2026 Purchase of Methamphetamine from PRADO PALACIO

21.     Prior to February 27, 2026, the CS and PRADO PALACIO, using the PRADO PALACIO Phone, arranged a narcotics transaction to take place on February 27, 2026, for the purchase of approximately four pounds of methamphetamine.

22.     On February 27, 2026, following a search of CS's person and CS's vehicle for contraband, which yielded no contraband, agents established surveillance in the vicinity of the location agreed upon between the CS and PRADO PALACIO for the drug transaction, near a parking lot in San Jose, California.

24.     At approximately 1:30 p.m., PRADO PALACIO was observed by agents walking over to the CS's vehicle. He was carrying a bag.  Inside the CS's vehicle, PRADO PALACIO provided approximately four pounds of suspected methamphetamine to the CS in exchange for $4,600.  The interaction between the CS and PRADO PALACIO on February 27, 2026, was observed and photographed by agents conducting surveillance, and recorded through a video and audio recording device within the CS's vehicle.

25.     Shortly after, at approximately 1:32 p.m., agents observed PRADO PALACIO exit the CS's vehicle and depart the area. Agents recovered the suspected narcotics in a bag.

26.     The suspected methamphetamine purchased from PRADO PALACIO on February 27, 2026 was sent to the DEA's Western Regional Laboratory for testing. The suspected methamphetamine tested positive for Methamphetamine Hydrochloride (net weight: 1787.7g $\pm$ 0.2g, substance purity: 97% $\pm$ 6%, amount pure substance: 1734.0g $\pm$ 115.2g).

**June 4, 2026 Purchase of Suspected Cocaine and Firearms from PRADO PALACIO**

27.     Prior to June 4, 2026, the CS and PRADO PALACIO, using the PRADO PALACIO Phone, arranged a narcotics transaction to take place on June 4, 2026, for the purchase of approximately three ounces of cocaine. Prior to the cocaine transaction between the CS and PRADO PALACIO, the CS and PRADO PALACIO also arranged for PRADO PALACIO to separately sell the CS three firearms.

28.     On June 4, 2026, following a search of the CS's person and vehicle for

contraband, which yielded no contraband, agents established surveillance in the vicinity of the location agreed upon between the CS and PRADO PALACIO for the drug transaction, a parking lot in San Jose, California.

29.    At approximately 12:20 p.m., PRADO PALACIO was observed by agents arriving at the initial deal location. Through the open driver's side window of the CS's vehicle, PRADO PALACIO provided approximately three ounces of suspected cocaine[2] to the CS in exchange for $2,250. The interaction between the CS and PRADO PALACIO on June 4, 2026, was observed and photographed by agents conducting surveillance, and recorded through an audio and video recording device within the CS's vehicle.

29.    Shortly after, at approximately 12:26 p.m., agents observed PRADO PALACIO depart the area of the initial deal location. Agents recovered the suspected narcotics in a clear zip-lock-style bag from within CS's vehicle. Following the narcotics transaction, prior to the firearm transaction, agents again searched the CS's person and vehicle for contraband, which yielded no contraband.

30.    At approximately 2:00 p.m., agents established surveillance at a separate location for the agreed-upon firearms transaction, a parking lot/gas station in San Jose, California. At this second deal location, the CS entered the vehicle occupied by PRADO PALACIO. PRADO PALACIO was seated in the front right passenger seat of the vehicle. The operator of the vehicle was refueling the vehicle with gasoline at the time of the firearms transaction. While inside the vehicle occupied by PRADO PALACIO, PRADO PALACIO handed the CS a brown paper bag

---

[2] The suspected cocaine purchased from PRADO PALACIO on June 4, 2026, was submitted to the DEA's Western Regional Laboratory (WRL) for testing. Results are pending. Based on my training and experience, I believe the white powdery substance, sold by PRADO PALACIO to CS, to be Cocaine Hydrochloride.

8

containing three black 9mm handguns in exchange for $2,700.  The interaction between PRADO PALACIO and CS was surveilled and photographed by agents on the ground, as well as video recorded by aerial surveillance[3].

31.    Shortly after, at approximately 2:05p.m., agents observed PRADO PALACIO depart the area of the second deal location. Agents subsequently recovered three black 9mm handguns from the CS's vehicle in a brown paper bag. All three firearms were sent to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) for testing.

### CONCLUSION

32.    Based on the facts and circumstances described above, there is probable cause to believe that PRADO PALACIO violated 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii), for intentionally distributing 50 grams and more of methamphetamine, a federally controlled Schedule II substance, on February 27, 2026, in San Jose, California, within the Northern District of California.  Accordingly, I respectfully request that the Court issue a criminal complaint and a warrant for PRADO PALACIO's arrest.

 /s/ Curtis J. Ames w/permission by VKD
Curtis J. Ames
Special Agent
Drug Enforcement Administration

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this __8__ day of June 2026.

HONORABLE VIRGINIA K. DEMARCHI
United States Magistrate Judge

---

[3] The video footage of the firearms transaction from the aircraft is slightly obscured due to the overhang of the gas station.

9